The Honorable William N. Rose Secretary, Department of Transportation
QUESTION:
Does the `resurfacing provision' of s. 335.04, F.S., apply to those roads formerly on the state system and known as secondary roads?
SUMMARY:
The functional classification or reclassification and transfer and resurfacing or renovation provisions of s. 335.04, F.S. 1979, apply to and operate on those secondary roads in the secondary road system which were part of the state highway system on June 30, 1977, and at the time chs. 77-165, 77-416 and 78-285, Laws of Florida, took effect and became operative.
Prior to the effective date of chs. 77-165 and 77-416, Laws of Florida, July 1, 1977, all public roads open to travel by the public generally and dedicated to the public use and roads which were constructed out of public funds and dedicated for general public usage were designated and established as state roads. Section 335.01(1), F.S. 1975. State roads were divided into the state highway system, the state park road system, the county road systems, and the city street systems. Section 335.01(2), F.S. 1975. The state highway system was divided into the primary road system and the secondary road system. Section 335.04(2), F.S. 1975. The secondary road system consisted of those state roads selected by resolution of the county commissioners of the several counties and approved by the Department of Transportation (hereafter the department). Section 335.04(4), F.S. 1975. Prior to 1977, the maintenance and repair of the state roads within the secondary road system were funded by the additional seventh cent tax upon motor fuel and, since October 1, 1971, the counties have been assigned full responsibility for the maintenance of roads in the state secondary road system within the respective counties.See s. 206.60(2)(b)1., F.S. 1975. See also s. 335.041, F.S. 1975 (repealed by s. 17 of ch. 77-165, Laws of Florida, effective July 1, 1977), providing that the maintenance of secondary roads constructed or reconstructed with surplus second gas tax monies under s. 206.60 and s. 9, Art. XII, State Const., was to be determined by cooperative agreement between the several boards of county commissioners and the Division of Road Operations of the department; and s. 206.60(2)(b)2., F.S. 1975, requiring the department, if requested by the board of county commissioners of any county, to continue to maintain such secondary roads as were being maintained under contract as of October 1, 1971, under such terms and conditions as might be mutually agreed upon between the department and the board of county commissioners of the respective county. Section 339.08(2), F.S. 1975, in effect, operated to prohibit the department from expending any of the proceeds of the first gas tax for the maintenance and repair of state roads within the secondary road system while the 1968 Revision of the State Constitution operated to prohibit the use of surplus second gas tax revenues for the maintenance and repair of the state roads within the secondary road system. See AGO's 079-104. and 079-43. (S.J.R. No. 824 proposed an amendment to s. 9, Art. XII, State Const., filed in the Office of the Secretary of State on June 23, 1980, which, among other things, allows the use of the proceeds of the second gas tax `for road maintenance as authorized by law.' The proposal was adopted at the general election held on November 4, 1980.) The several counties were authorized to acquire rights-of-way and other necessary land incident thereto for roads of the state secondary system within their respective counties, s. 337.28(1), F.S. 1975; title to such land and rights-of-way, however, was vested in the state, s. 337.28(3), F.S. 1975, as was title to all roads designated in the state highway system (of which the secondary road system was an integral part, s. 335.04[2], F.S. 1975), unless otherwise provided in the Florida Transportation Code, s. 337.29, F.S. 1975.
In enacting ch. 77-165, Laws of Florida, and the amendatory legislation, chs. 77-416 and 78-285, Laws of Florida, the Legislature is presumed to have known of the existing state of statutory law hereinabove discussed and cited and presumably acted with full knowledge thereof. See, e.g., Tamiami Trail Tours v. Lee, 194 So. 305, 306 (Fla. 1940); Collins Investment Company v. Metropolitan Dade County, 164 So.2d 806, 809 (Fla. 1964); Dickinson v. Davis, 224 So.2d 262, 264 (Fla. 1969). In the statutory background delineated above, the 1977 and 1978 Legislature undertook to extensively revise the preexisting statutory scheme relating to jurisdiction over public roads and the public transportation system. The following discussion, however, is confined to a consideration of the post-1975 amendments which, in my opinion, evidence and relate to the question of legislative intent and the purpose in the enactment of s. 335.04, F.S., as amended.
Section 6 of ch. 77-165, Laws of Florida (s. 335.01, F.S. 1979, entitled by the Legislature: Designation and systemization of public roads), `designated and declared to be, and . . . established as public roads' (emphasis supplied) all roads open to travel by the public generally and dedicated to the public use, and roads which are constructed out of public funds and dedicated for general public usage. Section 335.01(2), F.S. 1979, divides the `public roads' into four systems (formerly divided into classes): the state highway system, the state park road system, the county road systems and the city street systems. Pursuant to s. 335.02(1), F.S., the department continues to possess the authority to designate `roads' as state roads in the state highway system. The amendment of s. 335.02 by s. 2 of ch. 77-416, Laws of Florida, which added subsection (3), speaks prospectively and does not appear to have any effect upon the legislative intent in the enactment of s. 335.04, F.S., as amended. Neither chs. 77-165 and 77-416, Laws of Florida, nor ch. 78-285, Laws of Florida, in amending s. 335.04, contain any reference to state roads or the state highway system or any of the several `public roads' as designated and established and divided into the several systems prescribed by s. 335.01, F.S., or as mentioned in s. 335.02(1), F.S. Section 335.04(1), F.S. 1979, speaks only in general terms of the functional classification of `roads' and the transfers of responsibility therefor between the state and local governments, and the renovation and resurfacing of such `roads.'
Section 16, ch. 77-165, Laws of Florida, added subsection (3) to s. 337.29, F.S., which provides that the `[t]itle to all roadstransferred in accordance with the provisions of s. 335.04 shall be in the governmental entity to which said roads have been transferred [and] . . . [l]iability for torts shall be in the governmental entity having title as provided herein.' (Emphasis supplied.) Section 2 of ch. 78-285, Laws of Florida, amended subsection (3) of s. 337.29, F.S. 1977, to delete the words `title' and `herein' from the second sentence thereof which now provides that `[l]iability for torts shall be in the governmental entity having operation and maintenance responsibility as provided in s. 335.04(4).' (Emphasis supplied.) Section 337.29(3), as amended, appears to effect by operation of law the transfer of title to all roads, including those in the secondary road system on June 30, 1977, the title to which was then in the state, uponcompliance with the conditions and requirements of ss. 335.04(1) and 337.29(3); otherwise, title to the secondary roads remains and will continue to remain vested in the state. Section 7 of ch. 77-165, Laws of Florida (s. 335.04[4], F.S.), provides that the `department, counties, cities, and other political subdivisions shall have the responsibility for the operation and maintenance of the roads under their respective jurisdiction . . . .' (Emphasis supplied.) Read together, ss. 335.04(1) and 335.04(4), as enacted by ch. 77-165, Laws of Florida, and amended by ch. 77-416, Laws of Florida and s. 337.29(3), as amended by ch. 78-285, Laws of Florida, indicate that the legislative intent is that the term `responsibility' as used in the `transfer' provisions of s. 335.04(1) relates to the operation and maintenance of governmental jurisdiction over the various `roads' transferred pursuant to s. 335.04(1) and not to the transfer of or title to the roads or rights-of-way of such transferred roads. See also the provisions of s. 337.29(3), F.S., relating to a municipality's jurisdiction over public roads transferred from the municipality pursuant to s. 335.04 which were added to subsection (3) by ch. 77-416; and s. 335.04(4), as amended by s. 1, ch. 78-285, Laws of Florida, limiting a county's operation and maintenance responsibility for roads extending into and through an incorporated area. And see s. 3 of ch. 77-416 which repealed by omission those provisions in s. 7 of ch. 77-165 requiring the affected counties and municipalities to agree upon the terms and conditions of making required physical improvements and transfers in transfers between them, and mandating that federal aid funds available for county road and city street systems be matched only by funds provided by the affected counties or cities.
The 1978 amendment to s. 337.29(3) by ch. 78-285, Laws of Florida, appears to be in recognition of this legislative intent and purpose and operates to place tort liability on the governmental entity having the operation and maintenance responsibility for any road as provided in s. 335.04(4), or transferred to it as provided in s. 335.04(1), regardless of where or in whom the record title may reside or whether such title has been perfected by satisfying the conditions prescribed by s. 337.29(3) for the recordation of appropriate right-of-way maps. It also operates to exclude the state's tort liability on any road which it does not operate and maintain or have responsibility therefor. I do not perceive the amendment made to subsection (2) of s. 206.60, F.S. 1975, by s. 4 of ch. 77-165 (s. 206.60(2)(b)2., F.S. 1979), as a departure from or as conflicting with the apparent legislative intent and purpose hereinbefore discussed. That amendment deleted the reference to `state secondary road system' and the statute now provides that the several county commissioners have the full responsibility for the maintenance of roads on the county road system (as defined by s. 334.03(23), F.S. 1979). The state road system on June 30, 1977, as well as all other state roads formerly described and provided for by s. 335.01, F.S. 1975, clearly fall within the scope of s.335.01(1), F.S. 1979, designating and establishing all roads as `public roads and dividing those `public roads' into, among others, the state highway system and the county road systems. Clearly, the existing secondary roads (the title to which and the general administrative and supervisory jurisdiction over which were in the state), if not designated or redesignated by the department as state roads in the state highway system would, upon completion of the functional classification of all public roads as directed by s. 335.04(1), *3699 F.S. 1979, and if the jurisdictional `responsibility' therefor was not transferred by the department to another local government as might be required by the functional classification plan, fall within the `county road systems' prescribed by s. 335.01(2)(c), F.S. 1979, and defined by s. 334.03(23), F.S. 1979. The 1977 amendment to s. 206.60(2) appears merely to conform the provisions of s. 206.60, F.S., governing the disbursement and use of the additional seventh cent motor fuel tax to the new statutory scheme governing the operation and maintenance of all public roads and transportation systems as provided in s. 335.04, F.S. 1979, and other related provisions of the Florida Transportation Code, chs. 334-339 and 341, F.S.
My examination of this statutory scheme leads me to the view that the Legislature in enacting s. 335.04, F.S., as amended, intended the identification and the classification or reclassification of the public roads (as well as the county road and city street systems) described and established in s. 335.01, F.S. 1979, and based thereon or as might be required thereby, the transfer of the operation and maintenance responsibility of such roads as directed by s. 334.04(1), F.S. 1979, including the so-called secondary roads in the secondary road system of the state highway system as it existed on June 30, 1977, which are to be transferred to or from the state. If the Legislature had intended to exclude or except the secondary roads or the secondary road system from the operative force of s. 335.04, F.S., as amended, it could easily have done so in plain terms. Instead, it makes reference to `road,' `roads' and to `any road.' Such general terms, except as qualified by the provisions of s. 335.01, in the statutory context in which they are employed can only refer to the public roads and road systems described in and established by s. 335.01, F.S. 1979. Otherwise, the terms are not qualified in any way or limited to any particular kind or type or class of roads or road systems. Generally, the use by the Legislature of a general or comprehensive term indicates an intent to embrace or include all kinds, types or classes of the things described by the term to which the generality of the word or term reasonably extends. See
Florida Industrial Commission v. Growers Equipment Company,12 So.2d 889, 893-894 (Fla. 1943); Florida State Racing Commission v. McLaughlin, 102 So.2d 574, 576 (Fla. 1958).
As previously noted, however, the maintenance of the secondary roads within the former secondary road system was funded by the additional seventh cent tax upon motor fuel, the proceeds of which were distributed to the counties and over which the department has no control. See s. 206.60(2)(b), F.S. 1975. Section 206.60(2), F.S. 1979, continues to mandate a similar scheme or plan of distribution and funding, and the department continues to have no control over the proceeds of the additional seventh cent tax on motor fuel. Section 339.08(2), F.S. 1975, in effect, prohibited the department from expending any of the proceeds of the first gas tax for the maintenance of secondary roads or any road in the former county road system. With exceptions not here material, s.339.08(2), F.S. 1979, operates to prohibit the department from using the proceeds of the first gas tax for the maintenance and repair or resurfacing, renovation or physical improvement of the secondary roads in question or any road in the county road systems as they now exist. I understand from communications with the staff of your department that the Legislature has not appropriated any moneys to the department for its use in resurfacing or renovating or physically improving any secondary road to be transferred or which has been transferred or which is subject to transfer under the provisions of s. 335.04, F.S. 1979. The Legislature not having provided any financial means for the department to carry out or perform the duties imposed upon it by s. 335.04, it would seem that the indicated legislative intent with respect to the resurfacing or renovation of the secondary roads in question is utterly frustrated. cf. AGO 067-64 stating in part that in order for a state agency to function and operate there must be an appropriation for its operation before it may carry out its functions, and AGO 071-28. Despite the automatic transfer provision (on July 1, 1982), added to s. 335.04 by s. 3, ch. 77-416, Laws of Florida, s. 335.04(1) later provides that notwithstanding the time limitations otherwise provided in ch. 335, F.S., for the transfer of roads, no road which has been finally determined to need resurfacing shall be transferred to a county until it has been resurfaced. However, this requirement relating to the physical condition of roads at the time of transfer may be waived upon mutual consent. See s. 335.04(1), F.S.
In view of these circumstances, your letter suggests that the Legislature did not intend that the resurfacing provisions of s. 335.04, F.S., as amended, apply to or operate on the secondary roads in question. This would seem to necessarily imply that the Legislature also did not intend that the classification and transfer of roads provisions in s. 335.04, as amended, apply to or operate on these secondary roads. While this argument may appear to militate against the indicated legislative intent as hereinabove ascertained from the language of s. 335.04, as amended, and other related provisions of the Transportation Code (as noted above, the Legislature must be presumed to have known of these circumstances and fiscal restraints and to have acted with full knowledge thereof), it actually concerns the legislative wisdom in enacting chs. 77-165, 77-416 and 78-285, Laws of Florida, and the statutory scheme therein expressed and the administrative and fiscal feasibility of executing or implementing such a legislatively prescribed plan. I do not find any indication or evidence from the language employed in or the purpose of these statutes from which it must be determined that the Legislature intended to exclude or except the secondary roads in question from the operation of s. 335.04, F.S., as amended, and the classification, transfer and resurfacing and renovation provisions prescribed therein for any reason or on any basis. Cf. Smith v. City of St. Petersburg, 302 So.2d 756 (Fla. 1974); State v. Williams, 343 So.2d 35 (Fla. 1977) (intent of the Legislature as gleaned from the statute is the law). Nor do I find any other provision of the Transportation Code making any such exemption or exception therefrom. The fiscal considerations and the `totally disastrous' financial consequences to your department which you have noted, coupled with the restrictions on the use of the proceeds of the first gas tax imposed by s. 339.08(2), F.S. 1979, *3700 and the department's apparent financial inability to execute and perform the resurfacing and renovation provisions of s. 335.04, F.S., as amended, as they relate to the secondary roads in question, demonstrate an urgent need for legislative clarification and/or remedial action not only with respect to the provisions of s. 335.04, F.S. 1979, relating to such secondary roads but also with regard to any other roads to be transferred in accordance therewith from the department to local governments which require physical improvement, renovation or upgrading as prescribed by s. 335.04, F.S. 1979.
Prepared by: Joslyn Wilson, Assistant Attorney General